**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| **SAVE CORAL BAY, INC., CORAL BAY COMMUNITY COUNCIL, and DAVID SILVERMAN,** <br><br> **Plaintiffs,** <br> **v.** <br><br> **UNITED STATES ARMY CORPS OF ENGINEERS, the DISTRICT COMMANDERS FOR THE JACKSONVILLE DISTRICT OF THE ARMY CORPS OF ENGINEERS, MATTHEW A. WESTCOTT and BRANDON BOWMAN (*in their official capacity*) and the CHIEF, PALM BEACH GARDENS SECTION, ARMY CORPS OF ENGINEERS (*in her official capacity*),** <br><br> **Defendants.** | **CASE NO. 3:26-cv-000042** |

# ORDER

Before the Court is non-party applicant The Summer's End Group, LLC's ("SEG") motion [ECF 15] to intervene in the present matter. Plaintiffs Save Coral Bay, Inc., Coral Bay Community Council, and David Silverman ("Plaintiffs") do not oppose the motion, with Defendants United States Army Corps of Engineers, District Commanders for the Jacksonville District of the Army Corps of Engineers, Matthew A. Westcott and Brandon Bowman (in their official capacity), and the Chief, Palm Beach Gardens Section of the Army Corps of Engineers (in her official capacity) (collectively "Defendants") having taken no position on the motion. [ECF 15] at 3. For the reasons that follow, SEG's motion will be granted.

The events leading up to this suit began in 2014, when SEG began its permit[1] application process for the construction of a marina and associated structures in Coral Harbor. (the "Marina

[1] Among other permits, SEG applied for a permit under the "Rivers and Harbors Act Section 10, 33 U.S.C. § 403 ('Section 10') and the Clean Water Act ('CWA') Section 404 (sometimes collectively, 'Section 10/404 permit')." [ECF 15] at 2.

Project"). [ECF 13–2] ¶ 79; [ECF 15] at 2. This process continued over the next twelve years until 2026, when the Army Corps approved permits for SEG's project as well as permits for an aquatic ecosystem restoration, enhancement, and establishment project (the "AER Project"), and a project designed to protect a historic shipwreck in Coral Harbor (the "Avoidance Measures Project") (collectively, with the Marina Project, the "Projects"). [ECF 13–2] ¶¶ 193–96; [ECF 15] at 2. Plaintiffs challenge said approvals in the present suit, arguing that the resulting construction "will directly harm, deteriorate and in some cases destroy the aesthetics, habitat and natural features of Coral Bay." [ECF 13–2] ¶ 6. Plaintiffs contend that the Army Corps "acted arbitrarily, capriciously and not in accordance with law" by failing "to adequately and independently evaluate, study, consider and mitigate [these] negative impacts." [ECF 13–2] ¶ 9. The first amended complaint ("FAC") asks this Court to vacate the alleged unlawful permits and prohibit SEG's construction of the Project. *Id*. at 5 ¶ 18. Nine days after Plaintiffs filed the operative complaint,[2] SEG filed the present motion to intervene, arguing that it "has a clear and significant interest in participating in this lawsuit to defend the Projects that it has spent more than a decade developing." [ECF 15] at 3.

SEG moves this Court to intervene as of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure or, in the alternative, for permissive intervention under Rule 24(b).[3] [ECF 15] at 2. Under either rule, "[a] motion to intervene ... must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." FRCP 24(c). The party seeking intervention bears the burden of demonstrating its propriety. *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1181 n.9 (3d Cir. 1994) (noting that the burden of

---

[2] Plaintiffs filed their First Amended Complaint on September 21, 2026. [ECF 13].

[3] As explained below, because this Court finds SEG to be an intervenor of right pursuant to Rule 24(a), the Court need not address whether permissive intervention under Rule 24(b) applies.

proving all four elements under Rule 24(a) "falls on the applicant"); *In re Budeprion XL Mktg. & Sales Litig.*, 2012 WL 4322012, at *5 (E.D. Pa. Sept. 21, 2012) ("Whether to allow permissive intervention is left to the discretion of the trial court with the burden resting on the entity seeking to intervene.") (citing *Hoots v. Pennsylvania*, 672 F.2d 1133, 1135-36 (3d Cir. 1982)).

In assessing such, the court must accept as true the non-conclusory allegations made in support of a motion to intervene. *See Olympic Sports Data Servs. v. Maselli*, 2008 WL 5377626, at *2 (E.D. Pa. Dec. 22, 2008) ("The court is to accept the movant's motions and pleadings as true to the extent they are non-conclusory and well-pleaded.") (collecting cases). Lastly, "[a]n application to intervene, whether of right or by permission, must be timely under the terms of Rule 24." *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982). Rule 24(a)(2) governs intervention as of right and provides that a court must permit such where a movant,

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

FRCP 24(a)(2). Thus, in addition to timeliness, establishing intervention as of right requires SEG to prove the following elements: (1) "the applicant has a sufficient interest in the litigation;" (2) "the interest may be affected or impaired, as a practical matter by the disposition of the action;" and (3) "the interest is not adequately represented by an existing party in the litigation." *Gen. Star Indem. Co. v. Virgin Islands Port Auth.*, 224 F.R.D. 372, 374-75 (D.V.I. 2004) (quoting *Brody v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992)); *accord Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987) (stating that each factor "must be met to intervene as of right").

The record indicates that SEG's motion is timely; SEG's contention that its motion was filed "shortly after learning of [the amended complaint]" is supported by the motion's filing a mere nine days after Plaintiffs filed their FAC. [ECF 15] at 6. Additionally, Defendants have yet to respond to the FAC. *See* [ECF 18]. No schedule would be disrupted in granting intervention as no

substantive—nor procedural—proceedings have occurred. *See Mountain Top Condo Ass'n v. Dave Stabbart Master Builder, Inc.*, 72 F.3d 361, 369-70 (3d Cir. 1995) ("the critical inquiry [in assessing timeliness] is: what proceedings of substance on the merits have occurred?"). As such, the Court finds SEG has satisfied the timeliness factor.

Regarding SEG's interest in the litigation, SEG maintains that "[i]t owns or controls and has legal interest in the upland property and has spent almost $13 million over the past 12 years on project feasibility and development, acquisition of land rights for mitigation sites, permitting and environmental review, and economic impact analyses." [ECF 15] at 7. Taking SEG's allegations as true, and guided by the principle that "interests in property are the most elementary type of right that Rule 24(a) is designed to protect" and "many of the cases in which a sufficient interest has been found under ...Rule 24(a)(2) have been cases in which there is a readily identifiable interest in land, or some other form of property," *Deep Water Recoveries (S) PTE Ltd. v. Lost & Abandoned Silver Bullion*, 2024 WL 4903557, at *4 (D.N.J. Nov. 27, 2024) (quoting 7C Wright & Miller, *Federal Practice & Procedure* § 1908.1 (3d ed.) (footnotes omitted)), this Court also finds that SEG has demonstrated direct and sufficient interest in the present lawsuit to justify intervention.

After establishing sufficient legal interest, SEG must also demonstrate that its absence in the present suit jeopardizes said interest. *Oriental Bank v. Hutchings*, 2022 WL 1154752, at *5 (D.V.I. Apr. 19, 2022). In doing so, the Court must assess "the practical consequences of the litigation, and may consider any significant legal effect on the applicant's interest." *Brody v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992). Incidental effects are insufficient; "there must be 'a tangible threat to the applicant's legal interest.'" *Oriental*, 2022 WL 1154752, at *5 (quoting *Brody*, 977 F.2d at 1123). Here, SEG avers that "[i]t has invested millions of dollars in development of, and land rights acquisition for the Marina Project and mitigation projects." [ECF 15] at 10. Vacating the permits, as Plaintiffs seek, would completely halt SEG's construction. *See* [ECF 13–2] ¶ 18.

The Court further agrees with SEG's argument that because the requested relief would severely impair SEG's ability to protect its interests in the challenged Projects, its absence from this matter would jeopardize those interests.

Finally, SEG must prove that the representation of its interest in the existing suit by current parties may be inadequate. *Kleissler v. U.S. Forest Service*, 157 F.3d 964, 969 (3d Cir. 1998). This can be done by demonstrating that: (1) "the interest of the applicant so diverges from those of the representative party that the representative party cannot devote proper attention to the applicant's interest; (2) there is collusion between the existing parties; or (3) the representative party is not diligently prosecuting its suit." *U.S. v. Alcan Aluminum, Inc.*, 25 F.3d 1174,1185 n.15 (3d Cir. 1994). "An intervenor need only show that representation may be inadequate, not that it is inadequate." Where, like here, a governmental entity is a party to a suit, there exists a rebuttable presumption of adequate representation; in such a case the applicant intervenor must make "a strong showing of inadequate representation." *Kleissler*, 157 F.3d 964 at 972.

The present motion argues that the relief Plaintiffs seek would cause immediate, adverse financial harm to SEG due to its direct and substantial property, contractual, and economic interests in the Projects. [ECF 15] at 11. SEG contends that Defendants do not share these specific legal interests, as the government's role is limited to a public regulatory interest in defending its decision-making rather than protecting a direct real property stake. *Id*. at 11–12. Because Defendants are driven by this broad regulatory mandate rather than SEG's specific commercial and economic vulnerabilities, the Court concludes that SEG has shown that the existing parties may not adequately represent SEG's unique interests in this litigation. *See Kleissler*, 157 F.3d at 972 ("[t]he straightforward business interests asserted by intervenors here may become lost in the thicket of sometimes inconsistent governmental policies.").

Upon consideration of said motion and the record herein, it is hereby

**ORDERED** that non-party The Summer's End Group, LLC's motion [ECF 15] to intervene in this matter is **GRANTED**; it is further

**ORDERED** that The Summer's End Group, LLC **SHALL FILE** its answer **by no later than October 23, 2026**. Said answer shall mirror that of the pleading filed at [ECF 15–1], with the exception of the caption, which is to identify The Summer's End Group, LLC as an intervenor.

ENTER:

Dated: October 15, 2026

*/s/ G. Alan Teague*
G. ALAN TEAGUE
U.S. MAGISTRATE JUDGE